UNITED STATES FILTER CORPORA-
TION, U.S. Filter/Ionpure, Inc., IP Hold-
ing Company, Millipore Corporation and
Millipore Investment Holdings Limited,
Plaintiffs,

v.

IONICS, INCORPORATED, Defendants.

No. Civ.A. 98–10541–REK.

United States District Court,
D. Massachusetts.

Sept. 29, 1999.

---

Jerome P. Facher, William F. Lee, Wayne M. Kennard, Hale & Dorr, Mark Daniel Selwyn, Hale & Dorr, Boston, MA, Elizabeth Olivier, United States Filter Corporation, Assistant General Counsel, Palm Desert, CA, for plaintiffs.

Christine A. Maglione, Dimitry S. Herman, Beth E Turetsky, Wayne L. Stoner, Peter M. Dichiara, Hale and Dorr LLP, Boston, MA, for IP Holding Company.

Stephen Korn, Watertown, MA, Anthony J. Fitzpatrick, Michael R. Gottfried, Dennis D. Allegretti, Duane, Morris & Heckscher LLP, Boston, MA, for Ionics, Incorporated.

Susan G.L. Glovsky, Hamilton, Brooks, Smith & Reynolds, P.C., Lexington, MA, Gary H. Levin, Todd S. Holbrook, Eric H. Vance, Lynn B. Morreale, Woodcock Washburn Kurtz, Mackiewicz & Norris LLP, Philadelphia, PA, for Millipore Corp.

## Opinion

KEETON, District Judge.

### I. Pending Matters

Pending for decision are the following motions:

(1) Motion by Plaintiffs to Approve Screening Procedures (Docket No. 202, filed September 3, 1999) with Defendant's Opposition (Docket No. 214, filed September 24, 1999) and accompanying Declaration of Mark G. Lappin (Docket No. 215, filed September 24, 1999);

(2) Motion by Plaintiffs to Impound the Declaration of Toby H. Kusmer (Docket No. 203, filed September 3, 1999) with accompanying Declaration of Toby H. Kusmer Regarding Ionics Matters (Plaintiff's Exhibit A, Docket No. 216, filed in open court on September 27, 1999).

### II. Factual and Procedural Background

These motions arise in the middle of proceedings in complex patent cases between the defendant and plaintiffs. One case is before this court (*U.S. Filter Corp. et al. v. Ionics, Inc.*, No. 98–10541–REK) and another case is before another judge of the United States District Court for the District of Massachusetts (*U.S. Filter Corp. et al. v. Ionics, Inc. et al.*, No. 99–11243) (Zobel, D.J.). Other pending disputes may lead to the filing of one or more other cases, in this or some other court.

Plaintiffs have filed the pending Motion to Approve Screening Procedures (Docket No. 202) because Attorney Toby H. Kusmer, a partner in the law firm of Lappin & Kusmer, which is "of counsel" to defendants Ionics, Inc., is negotiating with Hale and Dorr, LLP, about joining that firm's intellectual property practice. Hale and Dorr represents plaintiffs in the two cases identified above.

On September 27, 1999, this court held an evidentiary hearing on the pending motions identified above. Only one witness, Toby H. Kusmer, was called to the stand. He was cross-examined by defendant's counsel.

### III. Applicable Law

The principal source of authority to which this court must look to decide the Motion to Approve Screening Procedures is Supreme Judicial Court Rule 3:07, Rule 1.10: "Imputed Disqualification: General Rule." The subsections of that rule that apply to the circumstances of the case before me are subsections (d) and (e). In their entirety, they are as follows:

(d) When a lawyer becomes associated with a firm, the firm may not undertake to or continue to represent a person in a matter that the firm knows or reasonably should know is the same or substantially related to a matter in which the newly associated lawyer (the "personally disqualified lawyer"), or a firm with which that lawyer was associated, had previously represented a client whose interests are materially adverse to that person unless:

(1) the personally disqualified lawyer has no information protected by Rule 1.6 or Rule 1.9 that is material to the matter ("material information"); or

(2) the personally disqualified lawyer (i) had neither substantial involvement nor substantial material information relating to the matter and (ii) is screened from any participation in the matter in accordance with paragraph (e) of this Rule and is apportioned no part of the fee therefrom.

(e) For the purposes of paragraph (d) of this Rule and of Rules 1.11 and 1.12, a personally disqualified lawyer in a firm will be deemed to have been screened from any participation in a matter if:

(1) all material information which the personally disqualified lawyer has has been isolated from the firm;

(2) the personally disqualified lawyer has been isolated from all contact with the client relating to the matter, and any witness for or against the client;

(3) the personally disqualified lawyer and the firm have been precluded from discussing the matter with each other;

(4) the former client of the personally disqualified lawyer or of the firm with which the personally disqualified lawyer was associated receives notice of the conflict and an affidavit of the personally disqualified lawyer and the firm describing the procedures being used effectively to screen the personally disqualified lawyer, and attesting that (i) the personally disqualified lawyer will not participate in the matter and will not discuss the matter or the representation with any other lawyer or employee of his or her current firm, (ii) no material information was transmitted by the personally disqualified lawyer before implementation of the screening procedures and notice to the former client; and (iii) during the period of the lawyer's personal disqualification those lawyers or employees who do participate in the matter will be apprised that the personally disqualified lawyer is screened from participating in or discussing the matter; and

(5) the personally disqualified lawyer and the firm with which he is associated reasonably believe that the steps taken to accomplish the screening of material information are likely to be effective in preventing material information from being disclosed to the firm and its client.

Massachusetts Rules of Professional Conduct 1.10(d)–(e), adopted June 9, 1997, Effective January 1, 1998 (hereinafter "MRPC 1.10").

Subsections (d) and (e) first became effective on January 1, 1998. The parties and the court have not located any case law to which the court can look for guidance in interpreting and applying these MRPC provisions. The Comments to the Rule, helpful to some extent, are quoted and considered in the analysis that follows.

### IV. Application of the Law to the Circumstances of this Case

It is clear from the Declaration of Toby H. Kusmer (Plaintiff's Exhibit A, Docket No. 216, filed in court September 27, 1999) and the Declaration of Mark G. Lappin (Docket No. 215) that if Mr. Kusmer were to join the firm of Hale and Dorr, LLP, he would be part of a Hale & Dorr practice group that continues to represent U.S. Filter plaintiffs in two matters both of which are the "same ... matter[s] in which ... [Mr. Kusmer] ... had previously represented [Ionics, Defendant] whose interests are materially adverse

to [U.S. Filter Plaintiffs, now clients of Hale and Dorr, LLP]...." MRPC 1.10(d). Thus, Mr. Kusmer can overcome the "Imputed Disqualification" Rule only if he satisfies at least one of the two exceptions listed as MRPC 1.10(d)(1) and MRPC 1.10(d)(2).

Mr. Kusmer argues that he fits within the class of people defined by the exception under MRPC 1.10(d)(2) as he "(i) [had] neither substantial involvement nor substantial material information relating to the matter and (ii) [will be] screened from any participation in the matter in accordance with paragraph (e) of [MRPC 1.10] and [will be] apportioned no part of the fee therefrom." MRPC 1.10(d)(2).

In support of this argument, Mr. Kusmer filed a declaration (Pl.'s Ex. A, Docket No. 216) that recited MRPC 1.10(d)(2) and then stated the extent of his involvement in the pending litigation between U.S. Filter and Ionics as follows:

"5. ...

a. At the request of Mark Lappin, I reviewed a copy of the patent in suit in [C.A. No. 98–10541–REK] ... around the time the action was filed.

b. At Mr. Lappin's request, I reviewed and commented on a draft motion for summary judgment in [C.A. No. 98–10541–REK]....

c. I have discussed legal issues arising in [C.A. No. 98–10541–REK] with Mr. Lappin. To the best of my recollection, no client confidences were mentioned during these conversations.

6. I have recorded a total of 1.6 hours on the Ionics client number for services in connection with the Matters."

Pl.'s Ex. A, Docket No. 216 at 2–3.

During cross-examination, Mr. Kusmer explained that he is one of only two equity partners of the law firm Lappin & Kusmer. The other equity partner is Mark Lappin, who testified on behalf of Ionics, Inc., during a three-day evidentiary hearing on September 14–16, 1999, of fundamental significance in Civil Action No. 98–10541–REK. Mr. Kusmer also stated that although Mark Lappin was almost exclusively in charge of the work for Ionics at Lappin & Kusmer, Mr.

Lappin did consult with Mr. Kusmer on several issues relating to Civil Action No. 98–10541–REK.

Mr. Kusmer added context to his written declaration by explaining, during cross-examination, that "there were times we discussed some events that were occurring, such as the hearings, and some of the personalities of the people involved." Mr. Kusmer further elaborated that he recalls two separate issues concerning the Ionics litigation on which Mr. Lappin consulted him; one "had to do with the proper party filing the reissue application" and the other concerned whether "the inventor on the reissue was a former employee of Ionics and [if] they could prove that he invented that subject matter at Ionics prior to going to U.S. Filter ..."

Mr. Kusmer also confirmed for the court, during cross-examination, that over the last four years Ionics or its subsidiaries have paid Lappin & Kusmer over one million dollars in fees, costs, and out-of-pocket disbursements. He further acknowledged that one million dollars is a substantial sum of money, and thus Ionics is a substantial client, for the ten-person firm of Lappin & Kusmer.

Given Mr. Kusmer's testimony, I cannot find that he was not substantially involved in the litigation, and I cannot find that he does not have substantial information relating to the pending litigation as MRPC 1.10(d)(2) would require. Given (a) that Mr. Kusmer is one of two equity partners in a ten-person law firm and (b) his acknowledgment that he has consulted with the other equity partner who was spending significant amounts of his time on the pending litigation, I cannot find on the record before me that Mr. Kusmer has satisfied either of the exceptions to the "Imputed Disqualifications" Rule, MRPC 1.10(d).

The Comments to MRPC 1.10 support this determination. Comment 9, as I read it with circumstances of the present matter in mind, illustrates a contrast. It refers to a situation in which a lawyer has no confidential information and the new firm would not be disqualified and no screening procedures would be required. With regard to that situation, the Comment says:

This would ordinarily be the case if the lawyer did no work on the matter and the matter was not the subject of discussion with the lawyer generally, for example at firm or working group meetings. The lawyer must search his or her files and recollections carefully to determine whether he or she has confidential information. The fact that the lawyer does not immediately remember any details of the former client's representation does not mean that he or she does not in fact possess confidential information material to the matter. Comment 9 to MRPC 1.10(d). In contrast, the situation Mr. Kusmer described during his testimony is one in which the equity partners in a firm discuss and consult with one another regarding pending matters and positions to be taken in current litigation on behalf of current clients.

Another comparison, less sharply contrasting, is suggested by Comment 10 to MRPC 1.10(d). Comment 10 discusses the situation in which the personally disqualified lawyer may not be able to avoid the conflict in the new firm if that new firm is a "very small firm." Comment 10 to MRPC 1.10(d). The Comment goes on to suggest that "if the personally disqualified lawyer practices in a different office of the firm from those handling the matter from which the personally disqualified lawyer is screened," screening procedures are more likely to be successful. *Id.* This Comment suggests a contrast between partners practicing in the same and in different offices. A reader may reasonably infer that the impracticability of effective screening would exist not only in small firms, like Lappin & Kusmer, but also in small practice groups within a large firm. In small firms the work on cases and for clients is likely to be shared among the small staff, at least informally if not formally. In small practice groups, a similar tendency is likely.

I credit Plaintiff's arguments that MRPC 1.10(d) is an attempt at a balance between a rule of strict attribution of disqualification from a lawyer's involvement, on the one hand, and a rule that protects an individual attorney from becoming unemployable because of insensitivity of decisionmakers (regulatory, judicial, or private) to the devastating consequences of disqualification from a gradually narrowing field in which that attorney has specialized and invested time and energy to develop superior professional qualifications.

For other cases likely to emerge for decision as experience with the administration of MRPC 1.10 matures, close and difficult issues must be faced in deciding the precise meaning of legal tests that use phrases such as "substantially related to a matter," "interests [that] are materially adverse," and "neither substantial involvement nor substantial material information relating to the matter." MRPC 1.10(d). These are phrases that require a decisionmaker to make an evaluative rather than bright-line determination. They require an exercise of discretion leading to a single choice after taking into account an array of factors. The lawmaking choice of the Supreme Judicial Court to promulgate MRPC 1.10 with its single-choice evaluative standard will make it necessary for trial judges, among others, to work out appropriate decisions in individual instances of professional conflicts of interest that have a bearing on participation of attorneys in a case before the trial judge for adjudication.

I do not undertake to press any farther toward that future agenda in the matter now before me because I conclude that the motion before me is clearly outside the area of doubt about what choice must be made to be faithful to the guidance that MRPC 1.10 provides. On the facts and circumstances of record before me, I conclude that I cannot make the findings that the plaintiffs and Mr. Kusmer have requested. I cannot find that Mr. Kusmer was not substantially involved or that he has no substantial material information relating to the matters in suit between U.S. Filter Corp. et al. and Ionics, Inc., for purposes of MRPC 1.10(d). Given that I cannot make the requested findings, I conclude also that the particular requirements for screening procedure stated in MRPC 1.10(e) are not relevant to the outcome of the motions before me. My decision is narrowly and precisely focused on the only issue I must decide. Deliberately, I do not undertake to decide anything more, which would in effect be an advisory opinion. For that reason, the form

of the order that follows is a dismissal of the Motion to Approve Screening Procedures without prejudice. To protect the privacy interests of all persons involved in this controversy, I will allow the Motion to Impound and order that the matters that are the subject of the motion remain under seal until further order of this or a higher court.

**ORDER**

For the foregoing reasons, it is ORDERED:

(1) Motion by Plaintiffs to Approve Screening Procedures (Docket No. 202, filed September 3, 1999) is DISMISSED WITHOUT PREJUDICE;

(2) Motion by Plaintiffs to Impound the Declaration of Toby H. Kusmer (Docket No. 203, filed September 3, 1999) is ALLOWED and the Declaration (Docket No. 216) will be held by the clerk under seal until further order of this or a higher court.