### SMITH & NEPHEW, INC.

v.

### ETHICON, INC., Johnson & Johnson, James E. Nicholson, Roland F. Gatturna, and James O'Leary

#### No. Civ.A.99–12320–RGS.

United States District Court, D. Massachusetts.

May 16, 2000.

Mark J. Hebert, John M. Skenyon, Jeffrey L. Snow, Fish & Richardson, Boston, MA, for Smith & Nephew, Inc.

David R. Schmahmann, Carl M. DeFranco, Jr., Nutter, McClennen & Fish, Boston, MA, Steven A. Zalesin, Patterson, Belknap, Webb & Tyler LLP, New York, NY, for Ethicon, Inc.

David R. Schmahmann, Carl M. DeFranco, Jr., Nutter, McClennen & Fish, Boston, MA, for Johnson & Johnson.

Carl M. DeFranco, Jr., Nutter, McClennen & Fish, Boston, MA, for James E. Nicholson, Roland F. Gatturna.

Carl M. DeFranco, Jr., Nutter, McClennen & Fish, Boston, MA, Kevin D.

O'Leary, Cummings & Lockwood, Hartford, CT, for James F. O'Leary.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISQUALIFY COUNSEL

STEARNS, District Judge.

Defendants James E. Nicholson and Roland F. Gatturna hold a series of patents for "suture anchors," devices that fasten soft tissue to bone during orthopedic surgery. Plaintiff Smith & Nephew, Inc. (S & N), claims ownership of the inventions under the provisions of defendants' employment contracts with Acufex Microsurgical, Inc. (Acufex) and American Cyanimide, S & N's corporate predecessors. Defendants seek to disqualify Fish & Richardson (F & R), the law firm representing S & N in this action, because an F & R attorney, Blair Perry, previously represented both Nicholson and Gatturna.

### BACKGROUND

In 1984, Nicholson and Gatturna were hired as researchers by Acufex. They retained Perry, then a partner at the Boston firm of Hale & Dorr, to negotiate their employment contracts with Acufex.[1] At Nicholson's request, Perry drafted a contract provision permitting Nicholson to independently develop and retain ownership of any invention involving "self-activated surgical staples." Nicholson Decl. ¶ 11. Gatturna's contract contained an identical provision. Gatturna Decl. ¶ 10. While Perry recollects drafting and revising parts of Nicholson's agreement, he does not remember representing Gatturna.[2] Perry Decl. ¶¶ 6, 7. In January of 1986, Acufex was acquired by American Cyanamid, which asked Nicholson and Gatturna to continue their research work. Nicholson and Gatturna retained Perry to negotiate consulting agreements with American Cyanamid. These agreements contained

---

1. Nicholson states that he first retained Perry in the fall of 1984. Nicholson Decl. ¶¶ 6, 7. At Nicholson's suggestion, Gatturna retained Perry shortly thereafter. Gatturna Decl. ¶ 9.

2. Perry *still possesses Nicholson's client file.* Perry Decl. ¶ 9.

similar surgical staples invention-retention clauses. Nicholson Decl. ¶¶ 12, 13; Gatturna Decl. ¶ 12.

In January of 1991, Perry left Hale & Dorr to join F & R as "of counsel." Perry Decl. ¶ 2. According to John Skenyon, an F & R attorney representing S & N, Perry has had no involvement in the lawsuit against Nicholson and Gatturna and has not disclosed to Skenyon any confidential or privileged information relating to his prior representation of Nicholson. Skenyon Decl. ¶¶ 4–6.

> At the time that we recognized that there might be a potential conflict issue arising from Mr. Perry's representation of Mr. Nicholson, we erected an "ethical wall" under which I, Mr. Perry, and the remaining members of the litigation team were instructed by Charles Winchester, Esq. not to discuss any aspect of Mr. Perry's representation of Mr. Nicholson. Instead, from that time forward, to the extent we needed to communicate with Mr. Perry with regard to this issue and to prepare this Opposition, we have only done so using other attorneys who have no involvement with either this case or the Oregon case as a conduit, to insure that no confidential information would accidentally pass to us.

3. Other F & R attorneys involved with the present litigation filed Declarations identical to Skenyon's.

4. Professor Charles Wolfram's suggestion that Perry is not a Fish & Richardson lawyer "in the sense intended by Rule 1.10(a)," given his attenuated relationship with the firm, Wolfram Decl. ¶ 19 n. 5, is a complete non-starter. Perry certainly considers himself an F & R lawyer, as Exhibit B to the Zalesin Declaration roundly demonstrates. And so does F & R, by permitting Perry to hold himself out as "of counsel" to the firm. Perry has in fact represented at least one other F & R client before this court within the past five years.

5. Rule 1.7 CONFLICT OF INTEREST: GENERAL RULE
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

Id., at ¶ 7.[3] Perry currently resides in Florida and works for F & R on a "semi-retired, part-time basis." Id., at ¶ 10. Perry is paid on an "hours worked" basis and does not share in F & R's profits. Prahl Decl. ¶¶ 6, 7.

## DISCUSSION

■ An attorney will be disqualified from representing a client if confidential or privileged information obtained during the representation of a prior client *could* be used to the prior client's disadvantage. *Freund v. Butterworth,* 117 F.3d 1543, 1574 (11th Cir.1997). Rule 1.10(a) of the Massachusetts Rules of Professional Conduct provides that

> [w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8(c) or 1.9.[4]

Defendants assert that Perry's representation of Nicholson and Gatturna implicates Rules 1.7 and 1.9. Defendants also contend that Rule 3.7(b) provides an additional ground for disqualifying F & R.

Rule 1.7 addresses representational conflicts that might adversely affect the interests of another client.[5] Rule 1.9 requires the disqualification of a lawyer who seeks to represent another person in a "substantially similar matter" whose interests are

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

materially adverse to the interests of a former client (unless the *former client consents*).[6] Rule 3.7(b) provides that "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7."

S & N, for its part, relies principally on the Rule 1.10 exception to the imputed disqualification rule, and an ethical opinion rendered by Cornell Law School Professor Charles Wolfram.

> d) When a lawyer becomes associated with a firm, the firm may not undertake to or continue to represent a person in a matter that the firm knows or reasonably should know is the same or substantially related to a matter in which the newly associated lawyer (the "personally disqualified lawyer"), or a firm with which that lawyer was associated, had previously represented a client whose interests are materially adverse to that person unless:
>
> > (1) the personally disqualified lawyer has no information protected by Rule 1.6 or Rule 1.9 that is material to the matter ("material information"); or

> (2) the personally disqualified lawyer (i) had neither substantial involvement nor substantial material information relating to the matter and (ii) is screened from any participation in the matter in accordance with paragraph (e) of this Rule and is apportioned no part of the fee therefrom.

■ Professor Wolfram's argument that the (d)(1) exception applies is based primarily on the fact that fifteen years has elapsed since Perry last represented Nicholson, making "it highly unlikely that Mr. Perry would recall much of interest or importance to this litigation." Wolfram Decl. ¶ 15. In the abstract, Professor Wolfram's "shelf life" argument has appeal. But its underlying premise, that the shrouds of time cloak confidences as effectively as a sip from the waters of Lethe, is contradicted by Perry's frank admission that he is "familiar" with Nicholson's Acufex and American Cyanamid agreements and recalls drafting and revising portions of both. Perry Decl. ¶¶ 5, 6.[7]

■ Professor Wolfram next opines that Perry would bring nothing of value to the litigation (that is, any information that is

---

6. Rule 1.9 CONFLICT OF INTEREST: FORMER CLIENT

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

  (1) whose interests are materially adverse to that person; and

  (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter, unless the former client consents after consultation.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter, unless the former client consents after consultation:

  (1) use confidential information relating to the representation to the disadvantage of the former client, to the lawyer's advantage, or to the advantage of a third person, except as Rule 1.6, Rule 3.3, or Rule 4.1 would permit or require with respect to a client; or

  (2) reveal confidential information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

7. Defendants have cause to question just how much Perry actually remembers in light of his refusal to discuss his representation of Nicholson with defendants' current counsel or to return Nicholson's client file. Zelesin Decl., Ex. B. In any event, a lawyer's assertion of less than perfect recall is not the controlling consideration. See Rule 1.10, Comment 9 ("The fact that the lawyer does not immediately remember any details of the former client's representation does not mean that he or she does not in fact possess confidential information material to the matter").

"material"), because Nicholson's and Gatturna's contracts are fully "integrated," and therefore shielded by the parole evidence rule from extrinsic attack. This argument is belied in the first instance by the parties' disputation over the meaning of the term "self-activated surgical staples." Compare Defendant's Memorandum, at 13, with Plaintiff's Opposition, at 5. As a general rule, confidential client information in a lawyer's possession need not be admissible under the rules of evidence to cause the disqualification of his firm. See *In re American Airlines, Inc.*, 972 F.2d 605, 618–619 (5th Cir.1992). More fundamentally, the argument confuses Perry's role as a prospective witness with his role as defendants' prior attorney. The issue is not so much what Perry might be able to testify to at trial, but what Perry knows because of the prior representation that might prove harmful to defendants' cause. As an example, the timing and evolution of Nicholson's thinking about "surgical staples," a hotly contested subject, comes readily to mind, as illustrated by Professor Wolfram's third "most compelling" argument. "Defendants now assert that Mr. Nicholson in fact did not conceive of the device until late 1986. Thus, by hypothesis, Mr. Perry could have been told nothing about how the concept of a 'self activated surgical staple' expressed in the Nicholson employment agreement in late 1984 might apply to a concept not yet formed in the mind of Mr. Nicholson or any other defendant." Wolfram Decl. ¶ 15. As Professor Susan Koniak aptly replies,

"[t]he fact that the phrase pre-dated the conception of the device does not mean that Mr. Perry and Mr. Nicholson had nothing in mind when they inserted the exception in the agreement." Koniak Decl. ¶ 42.

Professor Wolfram's argument that the (d)(2) exception applies is, I regret to say, nonsensical. "[B]ecause of the transient nature of the representation and the long stretch of time that ha[s] since transpired, Mr. Perry's involvement in the matter of Mr. Nicholson's employment agreement is properly regarded as not 'substantial' for present purposes." Wolfram Decl. ¶ 17. Perry drafted the very contractual provisions that are at the crux of this litigation. There was nothing "transient" at all about Perry's involvement. He represented Nicholson (and Gatturna) at every propitious turn. To say now that his role in drafting the contracts was not substantial because of the passage of time is akin to saying that Julius Caesar had no substantial involvement in the conquest of Gaul "because it happened a long time ago." [8]

On a last point, I agree with Professor Wolfram that Rule 3.7(b) may not be implicated (assuming *dubitante* that Perry's putative testimony would be helpful to his former clients and harmful to S & N) as defendants are not in a position to assert S & N's right to conflict-free representation.[9] Any lingering doubts on the subject have been satisfied by S & N's waiver of such a right. See Wolfram Decl. ¶ 21, Petrow

---

**8.** S & N also argues that F & R is uniquely qualified to litigate this case, having represented S & N in a related case in Oregon. Petrow Decl. ¶ 9. As defendants point out, the case in Oregon was a patent case, an area of law in which F & R has admitted expertise. This case is a straightforward contract case which many firms would be suited (and eager) to handle. Defendants' Reply Memorandum, at 6. More pertinently, there is no "uniquely qualified" exception to the disqualification rules.

**9.** Professor Koniak suggests that *Fiandaca v. Cunningham,* 827 F.2d 825, 829 (1st Cir.

1987), holds otherwise. I am not convinced that the case is analogous. *Fiandaca* involved a class counsel placed "in the untenable position of being simultaneously obligated to represent vigorously the interests of two conflicting clients" who were parties to the same action. *Id.* The First Circuit emphasized the duty of a trial court confronted with such a circumstance to supervise the conduct of the attorneys appearing before it. This is an issue separate from the issue of the "standing" of a party to vindicate its opponent's right to conflict-free representation (a subject not raised in *Fiandaca* ).

Decl. ¶ 11.[10]

## ORDER

For the foregoing reasons, defendants' Motion to Disqualify Fish & Richardson is *ALLOWED*.

SO ORDERED.

---

**10.** Because predicate (i) of exception (d)(2) is not satisfied, the imperviousness of the "Chinese Wall" that F & R has erected between Perry and the attorneys litigating this case is irrelevant. See *U.S. Filter Corp. v. Ionics, Inc.*, 189 F.R.D. 26, 30 (D.Mass.1999). Also, the debate between Professor Wolfram and Professor Koniak over whether the Massachusetts Rules of Professional Conduct incorporate a duty of client loyalty as an independent ground for compelling disqualification, while of more than academic interest, is unnecessary to resolve.